OTT, Acting Chief Judge,
dissenting opinion.
I dissent.
The question presented here concerns the proper interpretation and practical effect of a provision governing the computation of allowances for freight rate increases under standard Department of Transportation contracts for road construction.
Section 9-5.5 of such contracts reads, in pertinent part:
Section 9-5.5. Method of Determining Adjustment:
The amount of any contract adjustment to be made under the provisions of this Article will be determined as follows:
(a) For any applicable material, the base freight cost increase or decrease shall be the product of the theoretical weight of the material shipped at the increased or decreased rate, [multiplied] by the change in rate. [Emphasis supplied.]
(e) Weights used in calculating the amount of any adjustment will be based on the final contract pay quantities and the theoretical weights shown below.
(1) Limerock Base (sq. yd. pay unit) ... 100 lbs. per sq. yd. inch.
Simply stated, and subject to certain conditions not applicable here, those provisions direct that in situations where freight rates are increased during the course of a job, the contractor is entitled to the increased rate on materials hauled after the increase becomes effective. But the allowance is not based upon the actual weight of materials hauled; instead, it is based upon the “theoretical” weights of such materials — i. e., a set standard weight of the particular material when compacted to the Department’s specifications. If 100 tons of limerock, for example (the material involved here), compacts into 184 sq. yds. of 10 " base, which weighs only 92 tons according to the standards specified by the contract, the allowance for any rate increase would be based on the 92 tons and not on the 100 tons actually furnished by the contractor.
Neither party to this appeal quarrels with that theory. Their dispute focuses on the manner in which those calculations are made. Although the complexities of engineering concepts and calculations are not to be deprecated, the narrow issue on this appeal requires only an application of the *1149 cardinal principle governing the interpretation of contracts: the language used should be given its plain meaning whenever possible.
To avoid distractions from the precise issue before us, it is essential to bear in mind that the formula with which we are dealing was devised solely for use in ascertaining allowances for changes in freight charges. Other than that, it has nothing at all to do with the price to be paid for materials furnished under the contract. In other words, the example given above was solely for the purpose of illustrating how the contractor would be compensated if, during the progress of a project, he was faced with increased freight rates. I intended no intimation whatever that he would be paid for the materials on some “theoretical weight” basis. His total net receipts under the contract might be affected, but only by any increase or decrease in what he was allowed for freight charges.
The parties debate at great length such things as the propriety of using a “first in, first out” method of inventory accounting, and the reasonableness of the standard weights adopted by the Department for various materials. Those arguments merely muddy the water and obscure the real nub of their controversy, which is rather simple and is best illuminated by a hypothetical example which avoids odd numbers.
Suppose a contractor agreed to furnish the limestone needed in a project for $5.00 per ton, which included and was predicated upon a freight rate of $8.00 per ton. He delivered 900 tons and then the freight company he was using increased the rate to $3.50 per ton. Thereafter, he delivered another 100 tons to complete the job. The Department then inspected the project, conducted tests on the compacted limerock, and determined that the theoretical weight of the 1,000 tons of shipped material was 920 tons.
The contractor would receive, of course, $5,000.00 for the 1,000 tons of material actually shipped. The question is, and this case asks, how much should he receive because of the extra $.50 per ton he had to pay for freight on the last 100 tons shipped?
The Department takes the position that under section 9-5.5 the base freight cost increase under those circumstances would be only $10.00, i. e., $.50 per ton times 20 tons, the amount by which the theoretical weight of all limestone shipped for the project exceeds the actual weight of the limestone shipped before the rate was increased. The State Road Arbitration Board agreed with, and the majority of this court affirms, that interpretation of the contract.
I agree with the reasoning of the contractor, who asserts that if the proven compaction quotient in the hypothetical were 92% (920/i,ooo), then the theoretical weight of the 100 tons shipped after the rate increase would be 92 tons, resulting in a base rate cost increase of $46.00 if the contract provision is properly applied.
That is precisely the computation directed by section 9-5.5. There isn’t one word in that section that either directs or sanctions a comparison of (1) the theoretical weight of all the materials shipped for the entire project with (2) the actual weight of the material hauled before the rate was increased. In my opinion that is strictly a meaningless, apples-and-oranges comparison. Why would anyone be interested in what was shipped before the rate increase? The contractor has no problem at all with those shipments — he is concerned with the extra $.50 he had to pay on the last 100 tons.
What the statute explicitly and quite plainly states is that only two factors are involved in the computation: (1) the change in rate and (2) the theoretical weight of “the material shipped at the increased ... rate." (Emphasis added.) That doesn’t seem to me to be all that complicated, and I would reverse the arbitration order with instructions to the board to make a common sense application of the clear language of the contract in the manner urged by appellant.